IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

Brian Harris Palmer,

    Petitioner,

v.   No. 21-cv-1223 WJ-DLM

Ronald Martinez and
ATTORNEY GENERAL FOR
THE STATE OF NEW MEXICO,

    Respondents.

## MEMORANDUM OPINION AND ORDER OF DISMISSAL

**THIS MATTER** is before the Court on Petitioner Brian Harris Palmer's Response to the Court's screening Memorandum Opinion and Order, in which the Court required Palmer to show cause why his habeas petition should not be dismissed as untimely. *See* (Doc. 9) ("Screening MOO"); (Doc. 11) ("Response"). Based on a timeline of state docket activity that he constructed, which differs from the timeline in the Court's Screening MOO, Palmer argues that his original 28 U.S.C. § 2254 habeas petition (Doc. 1, as amended, Doc. 6) (the "Petition") was timely filed. (Doc. 11 at 2-4). He also raises an actual innocence claim. (Doc. 11 at 5-6). Having reviewed the Response, the Court concludes that Palmer has not shown that the Petition was timely filed, nor does he raise a colorable actual innocence claim that would allow him to proceed notwithstanding the time bar. For the reasons stated in the Court's Screening MOO and for the additional reasons stated herein, this the Petition shall be dismissed with prejudice.

### BACKGROUND[1]

---

[1] To better interpret the citations in the Petition, the Court takes judicial notice of Palmer's state court criminal dockets, Case No. D-202-CR-2014-2907; S-1-SC-37718; and S-1-SC-38821.  *See United States*

In 2015, a jury convicted Palmer of criminal sexual penetration resulting in personal injury and kidnapping. *See* Verdict in D-202-CR-2014-2907. The state court sentenced him to 18 years imprisonment, followed by a term of parole. *See* Judgment in D-202-CR-2014-2907. Judgment on the conviction and sentence was entered October 6, 2015. *Id.* Palmer filed a direct appeal. The New Mexico Court of Appeals (NMCA) affirmed the Judgment. *See State v. Palmer,* 2019 WL 2089545, at *1 (N.M. Ct. App. May 7, 2019). Palmer sought certiorari review with the New Mexico Supreme Court (NMSC), which was denied by an Order entered August 1, 2019. *See* Order Denying Petition in S-1-SC-37718. Palmer did not seek further review with the United States Supreme Court (USSC). *See* Doc. 6 at 3. The Judgment therefore became final no later than October 31, 2019, the first day following expiration of the 90-day federal certiorari period. *See Rhine v. Boone,* 182 F.3d 1153, 1155 (10th Cir. 1999) (for purposes of § 2254, a conviction becomes final when "the [USSC] has denied review, or, if no petition for certiorari is filed, after the time for filing a petition for certiorari with the [USSC] has passed").

On November 26, 2019, Palmer filed the first of several state post-conviction motions. The following timeline reflects the state court docket activity between 2019 and 2021, when Palmer filed the federal case.[2]

October 31, 2019:   The Judgment becomes final.

**- 26 days pass -**

---

*v. Smalls*, 605 F.3d 765, 768 n. 2 (10th Cir. 2010) (recognizing a court may take judicial notice of docket information from another court).

[2] The Court assumes a 30-day appeal period should be added each time the state trial court denied a filing by Palmer. *See* NMRA, Rule 12-201 (a direct appeal must be filed within 30 days after entry of the challenged ruling).

    Nov. 26, 2019:   Palmer files a motion to reconsider sentence.

    Dec. 19, 2019:   The state court denies the motion.

    Jan. 20, 2020:   Palmer declines to appeal, and the order is final.

    Jan. 21, 2020:   Statutory tolling ceases, and the clock starts ticking.

        **- 281 days pass -**

    Oct. 28, 2020:   Palmer files a state habeas petition.

    April 21, 2021:   The state court denies the petition.

    Aug. 5, 2021:   The NMSC denies certiorari relief.

    Aug. 6, 2021:   Statutory tolling ceases, and the clock continues ticking.

        **- 63 days pass –**

    Oct. 8, 2021:   Palmer files a state motion for transport and polygraph.

    Nov. 1, 2021:   Palmer files another state habeas petition.

    Dec. 29, 2021:   Palmer files the federal § 2254 proceeding.

*See* Docket Sheet in D-202-CR-2014-2907; S-1-SC-38821. Palmer continued to prosecute his state habeas petitions after he initiated the federal proceeding. The state court entered its most recent order denying habeas relief on May 12, 2022. *See* Order on Petition for Writ of Habeas Corpus in D-202-CR-2014-2907.

    Based on the foregoing timeline and governing legal standards, the Court concluded in the Screening MOO that the limitation period for filing a § 2254 habeas petition expired by October 3,

2021, such that the the Petition, filed originally on December 29, 2021,[3] was time barred. (Doc. 9 at 4-5). Rather than dismissing the Petition outright, the Court allowed Palmer to file a response containing more information about the time-bar and to expand upon his reference to an actual innocence claim. (Doc. 9 at 6).

In his Response, Palmer includes his own timeline:

> August 1, 2019- NMSC Denied Cert.
> October 8, 2019- NMCA Mandate and Memorandum Opinion were filed with the district court clerk affirming Petitioner's convictions
>     -starting 90-day cert. clock for U.S. Supreme Court
> November 26, 2019- Petitioner filed a timely pro-se Rule 5-801 motion for reconsideration of sentencing—stopping clock—
> December 19, 2019- Court denied Petitioner's pro-se motion for reconsideration—time to appeal—
> January 20, 2020—Palmer declines to appeal, order is final,
>     -clock resumes, 31 days remain for cert.-
> February 20, 2020- 90-day cert. period is up, judgment becomes final. –AEDPA clock starts ticking—
>     *251 days pass*
> October 28, 2020- Petitioner . . . filed a petition for a writ of habeas corpus
>     -stopping AEDPA clock-
> April 21, 2021- state court denies petition
> August 5, 2021 -NMSC denies cert. relief—starting clock again—
>     *64 days pass*
> October 8, 2021- Palmer files a state motion for transport and polygraph
> November 1, 2021- Palmer files another state habeas petition
> December 29, 2021- Petitioner. . . filed federal § 2254 petition.

(Doc. 11 at 2).

Based his version of the timeline, Palmer argues only 315 non-tolling days passed before

---

[3] In the timeliness section of the Petition, Palmer suggests he signed and filed the opening pleading (Doc. 1) in this case on October 14, 2021, rather than in December of 2021. *See* Doc. 6 at 49-50. In the Screening MOO, the Court concluded that this was factually incorrect, as the opening pleading contains a handwritten signature line with the date "12.26.21" next to Palmer's signature. *See* Doc. 1 at 3. Palmer's Response does not address this issue, and he is therefore deemed to have abandoned it.

4

he filed the Petition. He argues, further, that for "many months" he was in a mental health treatment center under close observation, "not nearly functional," and engaged in an unsuccessful endeavor to find counsel to represent him in in his federal habeas case (Doc. 11 at 4). Additionally, in support of an actual innocence claim, Palmer alleges that a recent polygraph examination shows the truthfulness of his denial of the criminal sexual penetration charges underlying his conviction. (Doc. 11 at 5-6). He also claims that a recent diagnosis of schizoaffective disorder could support a conclusion that he was wrongfully convicted. (Id.).

## DISCUSSION

Petitions for a writ of habeas corpus by a person in state custody must generally be filed within one year after the criminal judgment becomes final. 28 U.S.C. § 2244(d)(1)(A). The one-year limitation period can be extended:

(1) While a state habeas petition is pending, § 2244(d)(2);

(2) Where unconstitutional state action has impeded the filing of a federal habeas petition, § 2244(d)(1)(B);

(3) Where a new constitutional right has been recognized by the Supreme Court, § 2244(d)(1)(C); or

(4) Where the factual basis for the claim could not have been discovered until later, § 2244(d)(1)(D).

Equitable tolling may also available "when an inmate diligently pursues his claims and demonstrates that the failure to timely file was caused by extraordinary circumstances beyond his control." *Marsh v. Soares,* 223 F.3d 1217, 1220 (10th Cir. 2000).

1. <u>Timeliness.</u>

The Court's timeline and tolling analysis in the Screening MOO are incorporated by reference and will not be repeated here. The differences between it and Palmer's timeline stem from Palmer's misapprehension of the law governing the triggering of the 90-day period for filing a certiorari petition in the United States Supreme Court.

Palmer maintains that the 90-day period for filing a certiorari petition with the USSC began running on October 8, 2019, when the mandate was entered in the state trial docket, instead of August 1, 2019, when the NMSC denied state certiorari relief. "The [United States] Supreme Court's rules clearly provide, however, that '[t]he time to file a petition for a writ of certiorari runs from the date of entry of the judgment or order sought to be reviewed, and not from the issuance date of the mandate ….'" *Burton v. Jones*, 209 F. App'x 858, 859–60 (10th Cir. 2006) (quoting Rule 13.3, Rules of the Supreme Court of the United States); *see also Troutt v. Jones*, 288 F. App'x. 452, 453 (10th Cir. 2008) (rejecting argument that habeas petition was timely based on calculation tethered to state court issuance of mandate); *Drennan v. Pryor*, 662 F. App'x 565, 569 (10th Cir. 2016) (same). Palmer may also argue that, for tolling purposes, a ninety-day federal certiorari period should be added to the state court orders denying his post-judgment motions. Such calculation method is also incorrect under Supreme Court law. *See Lawrence v. Florida*, 549 U.S. 327, 332 (2007) (for purposes of § 2244(d)(2), a state post-conviction proceeding remains pending until "the State's highest court has … denied review"). The Court's analysis of the timeliness of his petition in the Screening MOO therefore governs the conclusion that the Petition is untimely.

2. <u>Equitable Tolling</u>.

The Court construes Plaintiff's claims regarding his time in a mental health treatment center and his attempts to find habeas counsel as a request for equitable tolling. Generally, [a habeas

6

petitioner] seeking equitable tolling bears the burden of establishing two elements: (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way." *Sigala v. Bravo*, 656 F.3d 1125, 1128 (10th Cir. 2011). "Equitable tolling of a limitations period based on mental incapacity is warranted only in 'exceptional circumstances' that may include an adjudication of incompetence, institutionalization for mental incapacity, or evidence that the individual is not 'capable of pursuing his own claim' because of mental incapacity." *White v. Roberts*, 605 F. App'x 731, 734 (10th Cir. 2015), citing *Reupert v. Workman*, 45 F. App'x. 852, 854 (10th Cir.2002) (quoting *Biester v. Midwest Health Servs., Inc.*, 77 F.3d 1264, 1268 (10th Cir.1996). "[M]ental impairment is not per se a reason to toll a statute of limitations." *Del Rantz v. Hartley*, 577 F. App'x 805, 810 (10th Cir. 2014). Instead, equitable tolling is appropriate only if the petitioner presents "adequate proof of incompetence" during the relevant timeframe. *Reupert*, 45 F. App'x at 854.

Palmer does not allege that he was adjudicated incompetent; instead, he claims that for "many months" he was at a mental health treatment center experiencing reduced functioning. He does not provide details or attach evidence showing what his condition was, when it began, how long it lasted. *See e.g.*, *White*, 605 F. App'x at 735 (concluding a habeas petitioner was not entitled to equitable tolling because "little, if any, information as to what condition or conditions caused [the petitioner] to be hospitalized, let alone any evidence of mental incompetence"); *O'Bryant v. Oklahoma*, 568 F. App'x 632, 636 (10th Cir. 2014) (unpublished) (explaining that equitable tolling is warranted only in cases of "profound mental incapacity" such as when a prisoner is institutionalized or adjudicated mentally incompetent). Further, as he was in treatment for *many*, and impliedly not *all*, of the months comprising the limitations period, Palmer fails to show why

7

he could not file a habeas petition in the months that he was not experiencing its effects. In sum, Palmer's reference to his mental health treatment is insufficient to establish equitable tolling.

Nor does Palmer's inability to find habeas counsel warrant equitable tolling. There is no right to counsel in habeas proceedings. *Hickmon v. Mahaffey*, 28 F. App'x 856, 858 (10th Cir. 2001), citing *Coleman v. Thompson*, 501 U.S. 722, 756–57 (1991). Therefore, the inability to hire an attorney . . . will not excuse an untimely habeas petition. *Hickmon*, 28 F. App'x at 858.

3. <u>Actual Innocence</u>.

Based on the results of a polygraph test that he took on July 28, 2022 (*see* Doc. 11 at 13), Palmer argues that he is actually innocent of the criminal sexual penetration charge of which he was convicted. (Doc. 11 at 5). He argues that the test also serves as a gateway through which he should be able to pursue a claim of ineffective assistance of counsel for his counsel's failure to pursue a polygraph test prior to trial. (Id.)

"As a gateway, a claim of actual innocence enables habeas petitioners to overcome a procedural bar in order to assert distinct claims for constitutional violations." *Farrar v. Raemisch*, 924 F.3d 1126, 1130 (10th Cir. 2019). This rare exception applies only where the petitioner persuades "the district court that, in light of the new evidence, no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt." *Burke v. Bigelow*, 792 F. App'x 562, 565 (10th Cir. 2019); *McQuiggin*, 569 U.S. 383, 386 (2013). Thus, the petitioner must show that "a constitutional violation has probably resulted in the conviction of one who is actually innocent" which requires a "stronger showing than that needed to establish prejudice." *Schlup*, 513 U.S. at 327. The claim must be supported by "new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented

at trial." *Schlup*, 513 U.S. 298 at 324. "[T]iming [is] a factor relevant in evaluating the reliability of a petitioner's proof of actual innocence." *McQuiggin*, 569 U.S. at 399. "Unexplained delay in presenting new evidence bears on the determination whether the petitioner has made the requisite showing." *Id.*

There is no Supreme Court or Tenth Circuit authority recognizing the results of a post-conviction polygraph test as "new reliable evidence" as that phrase is used in the actual innocence context. Allowing polygraph results garnered years after a conviction, when time has affected memories and perceptions and, and—as is uniquely the case here—mental illness has manifested, to support a gateway actual innocence claim could have a profound effect on the finality of criminal judgments. The actual innocence gateway is not intended to serve as an opportunity for retrial when circumstances support the development of more favorable credibility evidence than what was available prior to trial; rather, it is intended to remedy extraordinary instances of a miscarriage of justice. *Schlup*, 513 U.S. at 324 (the actual innocence gateway seeks "to balance the societal interest in finality, comity, and conservation of scarce judicial resources with the individual interest in justice that arises in the extraordinary case.); *McQuiggin*, 569 U.S. at 393 (same). Even if polygraph test results were generally considered "new reliable evidence," however, Palmer's claim would fail for the following reasons.

First, the timing of Palmer's polygraph test diminishes its value in establishing actual innocence. The crime for which Palmer was convicted occurred on June 6, 2014. *See* Indictment in D-202-CR-2014-2907. The trial began over a year later, on July 13, 2015. *See* Notice of Trial in D-202-CR-2014-2907. Palmer did not take a polygraph test until July 28, 2022—eight years after the crime and seven years after his conviction. He provides no justification for the delay in

acquiring this evidence before trial or in the seven ensuing years. *McQuiggin*, 569 U.S. at 399 (unjustified delay may figure in determining "whether a petitioner has made a sufficient showing of innocence"); *c.f. Schlup*, 513 U.S. at 332 ("A court may consider how the timing of the submission and the likely credibility of [a petitioner's] affiants bear on the probable reliability of ... evidence [of actual innocence].").

Second, the Court is not persuaded that, in the context of this case, the polygraph evidence is of such quality and nature that "no juror, acting reasonably, would have voted to find Palmer guilty beyond a reasonable doubt" if it had been presented at trial. *Burke*, 792 F. App'x at 565. This is not a circumstance in which a contemporaneous polygraph examination was kept from the jury. Instead, Palmer took the test for the apparent purpose of developing evidence to support his untimely habeas petition. The results of *this* polygraph test could not have been presented to the jury and viewed in the context of the panoply of evidence that led the jury to find guilty beyond a reasonable doubt because, even though the technology to perform the test was available prior to trial, Palmer waited eight years before submitting to it.

Third, while the polygraph examination bolsters the credibility of Palmer's claim of innocence, credibility determinations are squarely the purview of a fact finder. Typically, credibility evidence does not support gateway actual innocence claims.  *See Frost v. Pryor*, 749 F.3d 1212, 1232 (10th Cir. 2014) (evidence that bears on witness credibility does not establish actual innocence).

Finally, though Palmer frames his actual innocence claims as a gateway to claim ineffective assistance of counsel, his reasoning is circular-- he alleges that the polygraph results prove that his counsel was ineffective for not pursuing a polygraph test—and unpersuasive. If Palmer believed

that his trial counsel was ineffective for refusing to pursue a polygraph test before trial, there is no discernable reason that he could not have raised the issue before the statute of limitations expired. As it stands, it appears that the ineffective assistance claim, vis a vis the polygraph examination, is a veiled attempt to circumvent the prohibition against standalone actual innocence claims. *See e.g.*, *Herrera v. Collins*, 506 U.S. 390, 400 (1993) ("Claims of actual innocence based on newly discovered evidence have never been held to state a ground for federal habeas relief absent an independent constitutional violation occurring in the underlying state criminal proceedings."); *Vreeland v. Zupan*, 906 F.3d 866, 883 n.6 (10th Cir. 2018) (denying a certificate of appealability because freestanding assertions of actual innocence cannot support habeas relief); *LaFevers v. Gibson*, 238 F.3d 1263, 1265 n.4 (10th Cir. 2001) ("[A]n assertion of actual innocence ... does not, standing alone, support the granting of the writ of habeas corpus."); *Sellers v. Ward*, 135 F.3d 1333, 1339 (10th Cir. 1998) ("[T]he claim of innocence ... itself is not a basis for federal habeas corpus no matter how convincing the evidence.").

Palmer also posits that his recent diagnosis of schizoaffective disorder could support his claim of actual innocence. Measured against the legal standards set forth earlier, this undeveloped assertion does not raise a colorable claim of actual innocence.

For the foregoing reasons and for the reasons stated in the Court's Screening MOO, Palmer's untimely Petition shall be dismissed. As the untimeliness of the Petition is not reasonably debatable, the Court will deny a certificate of appealability under Habeas Corpus Rule 11. *See Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (certificate of appealability can only issue where "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong").

**IT IS ORDERED** that Petitioner Brian Harris Palmer's 28 U.S.C. § 2254 Habeas Corpus Petition **(Doc. 6)** is **DISMISSED** with prejudice; a certificate of appealability is **DENIED**; and a separate judgment will be entered closing this case.

_____
WILLIAM P. JOHNSON
CHIEF UNITED STATES DISTRICT JUDGE